[No. 14895–8–I.   Division One.   September 2, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. HENRY BARRY UHTHOFF, JR., *Appellant.*

*John W. Lundin III,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Susan Ulery, Deputy,* for respondent.

SWANSON, J.—Henry Barry Uhthoff, Jr., appeals his conviction, following a bench trial, of one count of possessing with the intent to manufacture or deliver lysergic acid diethylamide (LSD) in violation of RCW 69.50.401(a) and two counts of possessing a controlled substance, *viz.,* cocaine and hashish and psilocyn, in violation of RCW 69.50.401(d). He claims error in the trial court's failure (1) to suppress evidence obtained pursuant to a search warrant where the District Court which issued the warrant allegedly lacked subject matter jurisdiction and (2) to disclose the identity of the confidential informant, whose testimony was allegedly critical to his defense.[1]

On July 20, 1983 a Bellevue District Court judge issued a search warrant for the residence of Bradley Alan Fish and Uhthoff, located at 2030 Broadway Avenue East, Seattle, King County, Washington. The warrant was issued on the basis of information provided by a confidential informant. Bellevue police officers executed the warrant and seized various drugs. Uhthoff was charged by an amended information with three counts of possessing controlled substances and one count of possessing with the intent to manufacture or deliver a controlled substance.

At a pretrial hearing the trial court denied the defense motion to suppress evidence seized during execution of the search warrant based upon a jurisdictional challenge and granted the defense motion for an in camera hearing to

---

[1]The defendant concedes that the alleged error regarding the record of the proceedings has been cured. Reply Brief of Appellant, at 1.

determine whether the confidential informant's identity should be disclosed. The disclosure of the informer's identity was refused following an in camera hearing with the informant present. After a bench trial in which Fish was a codefendant, Uhthoff was convicted of two counts of RCW 69.50.401(d) violations and one count of an RCW 69.50-.401(a) violation and was granted probation. He appeals the judgment and sentence.

The issues presented in this appeal are (1) whether a district court has jurisdiction to issue a search warrant for premises located within its county but outside its district and (2) whether the trial court abused its discretion in denying disclosure of the confidential informant's identity.

### SUBJECT MATTER JURISDICTION

Uhthoff contends that under former RCW 3.20.120 a class A county justice of the peace has no jurisdiction to issue a search warrant for the seizure of property located outside his precinct unless the prosecuting attorney approves in writing, and that under RCW 36.13.090 this limitation applies to a class AA county like King County unless otherwise provided. Therefore, according to Uhthoff, since no prosecutor's written approval was obtained here, the District Court lacked jurisdiction to issue the search warrant for his and Fish's residence. We disagree.

Under our state constitution[2] the Legislature has the sole authority to determine the powers, duties and jurisdiction of justices of the peace and any other inferior courts established by the Legislature. *Young v. Konz,* 91 Wn.2d 532, 540–42, 588 P.2d 1360 (1979). The jurisdiction of courts of limited jurisdiction must be delineated by stat-

---

[2]Const. art. 4, § 1 provides: "The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide."

Const. art. 4, § 10 (amend. 65) provides in part: "The legislature shall . . . prescribe by law the powers, duties and jurisdiction of justices of the peace . . ."

Const. art. 4, § 12 provides: "The legislature shall prescribe by law the jurisdiction and powers of any of the inferior courts which may be established in pursuance of this Constitution."

ute. Under RCW 3.66.060 the boundaries of the county ordinarily define a district court's territorial jurisdiction in criminal matters. *State v. Davidson*, 26 Wn. App. 623, 625–27, 613 P.2d 564 (1980), *review dismissed*, 95 Wn.2d 1026 (1981). Uhthoff so concedes. Brief of Appellant, at 9.

Former RCW 3.66.060[3] provides in part:

The justice court shall have jurisdiction: (1) Concurrent with the superior court of all misdemeanors and gross misdemeanors committed in their respective counties and of all violations of city ordinances[;] . . . (2) to sit as committing magistrates and conduct preliminary hearings in cases provided by law; (3) concurrent with the superior court of a proceeding to keep the peace in their respective counties[.]

Further, RCW 69.50.509,[4] which does not address a court's territorial jurisdictional limits to order a search, expressly authorizes a district court judge, upon probable cause, to issue a warrant for the search and seizure of controlled substances with or without the approval of the prosecuting attorney. *State v. Davidson, supra* at 625–26. Here under RCW 3.66.060 and 69.50.509, the judge of Bellevue District Court, located in King County, had jurisdiction to issue a warrant for the search and seizure of controlled substances at Uhthoff's residence in Seattle, King County, Washington, even without the prosecutor's approval.

Citing RCW 3.66.100, Uhthoff nonetheless argues that

---

[3]RCW 3.66.060 was amended by Laws of 1984, ch. 258, § 44, p. 1316.

[4]RCW 69.50.509 states in part:

"If, upon the sworn complaint of any person, it shall be made to appear to any judge of the superior court, justice of the peace, district court judge or municipal judge that there is probable cause to believe that any controlled substance is being used, manufactured, sold, bartered, exchanged, administered, dispensed, delivered, distributed, produced, possessed, given away, furnished or otherwise disposed of or kept in violation of the provisions of this chapter, such justice of the peace or judge shall, with or without the approval of the prosecuting attorney, issue a warrant directed to any law enforcement officer of the state, commanding him to search the premises designated and described in such complaint and warrant, and to seize all controlled substances there found . . ."

since under RCW 3.66.070[5] proper venue would have been absent in the subsequent prosecution of his case, the District Court lacked jurisdiction to issue the search warrant. Former RCW 3.66.100[6] provides in part:

> Every justice having authority to hear a particular case may issue . . . criminal process in and to any place in the state.

A search warrant is a form of process. *State v. Noah,* 150 Wash. 187, 189, 272 P. 729 (1928), *cited in State v. Davidson, supra* at 626.

However, the authority to hear a case refers to jurisdiction, not venue. Venue is the place where an action is tried. *PUD 1 v. Puget Sound Power & Light Co.,* 43 Wn.2d 1, 4, 260 P.2d 315 (1953); Black's Law Dictionary 991, 1727 (4th rev. ed. 1968). Here even if under RCW 3.66.070 venue would have been improper in the prosecution of Uhthoff since the criminal act occurred in the district of Seattle, not Bellevue, the Bellevue District Court had jurisdiction over the action under RCW 3.66.060 since the crime occurred in the same county in which the court is located. *Cf. State v. Lindbo,* 94 Wn.2d 112, 114–15, 614 P.2d 1277 (1980); *State v. Miller,* 59 Wn.2d 27, 29, 365 P.2d 612 (1961).

Moreover, RCW 3.66.100 is not so much a grant of criminal jurisdiction to the district court as an expansion of its criminal jurisdiction to the entire state for the issuance of process if the district court has the authority to hear the case, *i.e.,* jurisdiction over the action. *State v. Davidson, supra* at 625. Here the District Court had criminal jurisdiction under RCW 3.66.060, and its assertion of jurisdiction to issue the warrant was consistent with RCW 3.66.100.

Uhthoff further argues that under RCW 36.13.090 the requirement of a prosecutor's approval for certain issuances of warrants applicable to class A counties under RCW

---

[5]Former RCW 3.66.070 provides in part: "All criminal actions shall be brought in the justice court district where the alleged violation occurred . . ."

[6]RCW 3.66.100 was amended by Laws of 1984, ch. 258, § 701, p. 1386.

3.20.120[7] (repealed 1984) applies to class AA counties like King County. RCW 36.13.090 states that all laws related to the powers and duties of "first class counties and the officers thereof" shall apply with equal force to class A and class AA counties unless otherwise provided by law. Here RCW 3.20.120 provides otherwise since it is expressly limited to class A counties. King County is a class AA county. Moreover, RCW 36.13 deals with the classification of counties, not specifically with courts, so that the applicability of RCW 36.13.090 to RCW 3.20, which deals with justices of the peace, seems unlikely. This is particularly so in light of other former RCW 3.20 provisions, which expressly set forth the jurisdiction of justices of the peace.

RCW 3.20.040 (repealed in 1984) states in part regarding the criminal jurisdiction of justices of the peace:

> (1) Justices of the peace shall have jurisdiction concurrent with the superior courts of all misdemeanors and gross misdemeanors committed in or which may be tried in their respective counties.

RCW 3.20.040(1). RCW 3.20.050[8] (repealed 1984) sets forth the territorial jurisdiction of justices of the peace:

> The jurisdiction of justices of the peace elected in pursuance of the provisions of this title shall be coextensive with the limits of the county in which they are elected or appointed.

The jurisdiction of courts of limited jurisdiction must clearly appear in a statute, and the enlargement or abridgement of the statutorily created territorial jurisdiction of the justice courts similarly must be clearly set forth. *See State v. Davidson, supra* at 626. Moreover, RCW

---

[7]RCW 3.20.120 (repealed 1984) provides:

"In a class A county no justice of the peace shall have jurisdiction to receive a complaint or to issue a warrant for any criminal offense committed outside the boundaries of his precinct, or to issue a search warrant for the seizure of property located outside his precinct unless the same shall be approved in writing by the prosecuting attorney of such class A county."

[8]RCW 3.20.040, .050, and .120 were repealed by Laws of 1984, ch. 258, § 84, p. 1328.

69.50.509 expressly authorizes a district court to issue a search warrant for controlled substances with or without a prosecutor's approval. *Davidson*, at 625–26.

### CONFIDENTIAL INFORMANT

The use of informants is essential in certain areas of law enforcement, and the typical informer conditions his cooperation upon his identity remaining confidential. *State v. Casal*, 103 Wn.2d 812, 815, 699 P.2d 1234 (1985) (citing 1 W. LaFave, *Search and Seizure* § 3.3(g), at 577 (1978)). The government's privilege to withhold the identity of police informers, known as the "informer's privilege," is recognized under RCW 5.60.060(5) and CrR 4.7(f)(2).[9] The purpose of this privilege is to encourage citizens to communicate their knowledge to police in furtherance of the public interest in law enforcement. *State v. Harris*, 91 Wn.2d 145, 148, 588 P.2d 720 (1978).

In *Roviaro v. United States*, 353 U.S. 53, 60–61, 1 L. Ed. 2d 639, 77 S. Ct. 623, 627–28 (1957), the United States Supreme Court recognized the purpose underlying the informer's privilege but nevertheless held that if disclosure of an informer's identity is "relevant and helpful to the defense . . . or is essential to a fair determination of a cause, the privilege must give way." *State v. Harris, supra.* No fixed rule governs disclosure, and in determining when disclosure is justifiable, the court must balance the "public interest in protecting the flow of information against the individual's right to prepare his defense", taking into account the particular circumstances of each case, such as "the crime charged, the possible defenses, the possible sig-

---

[9]RCW 5.60.060(5) provides:

"A public officer shall not be examined as a witness as to communications made to him in official confidence, when the public interest would suffer by the disclosure."

CrR 4.7(f)(2) provides:

"Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant. Disclosure of the identity of witnesses to be produced at a hearing or trial shall not be denied."

nificance of the informer's testimony, and other relevant factors", *Roviaro v. United States,* at 62; *State v. Harris, supra* at 150.

Recently our State Supreme Court summarized *Roviaro's* holding as follows:

> [T]he privilege must yield to the defendant's need to know the informant's identity in cases *where the informant is a material witness on the question of a defendant's guilt or innocence.* In such a case, the State must disclose to the defendant the identity of the informant if the trial court determines that the defendant's interest in disclosure outweighs the public interest in nondisclosure. *See State v. Harris,* 91 Wn.2d 145, 151, 588 P.2d 720 (1978).

*State v. Casal, supra* at 816. The defendant has a constitutional right to disclosure of the identity of an informer who supplied information relevant to the issue of guilt or innocence. *State v. Casal, supra.*

An in camera hearing at which the judge hears the informer's testimony and applies the *Roviaro* standard is the preferred means of determining whether the court may require disclosure. CrR 4.7(h)(6) authorizes such an in camera session. *State v. Cleppe,* 96 Wn.2d 373, 382, 635 P.2d 435 (1981), *cert. denied,* 456 U.S. 1006 (1982); *State v. Harris, supra.* The trial court exercises its discretion in determining whether an in camera hearing should be held; however, such a hearing is necessary if "the defendant makes an initial showing that the confidential informant may have evidence that would be relevant to the defendant's innocence." *State v. Potter,* 25 Wn. App. 624, 628, 611 P.2d 1282 (1980); *accord, State v. Allen,* 27 Wn. App. 41, 48, 615 P.2d 526, *review denied,* 94 Wn.2d 1025 (1980).

Assuming that Uhthoff made the requisite showing to be entitled to an in camera hearing, the question is whether the trial court abused its discretion in refusing to order disclosure of the informant's identity here. *United States v. Grisham,* 748 F.2d 460, 463–64 (8th Cir. 1984). The defendant bears the burden of showing the materiality of the informant's testimony by more than speculation that

the evidence an informant may provide will be material. *Grisham*, at 464.

Here the trial court's denial of the defense motion to disclose the informer's identity was based upon its finding that the "informant would not be able to provide information which was relevant and helpful to the defendant's case on the issue of guilt or innocence." Based upon the case law, Uhthoff's claim that the trial court applied the wrong standard is unwarranted. *Roviaro v. United States*, at 61; *State v. Casal, supra* at 816; *State v. Harris, supra* at 148. Considering the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors, Uhthoff's argument that the trial court misapplied the *Roviaro* standard and abused its discretion in refusing disclosure similarly is meritless.

Uhthoff claims that the in camera hearing transcript[10] reveals that the informant could have provided (1) exculpatory testimony as to the occupancy of the residence and possession of the narcotics and (2) information that would have led to the discovery of potential defense witnesses, including the informant himself as a potential material defense witness. The transcript contradicts these claims.

The informant stated that he had been told by a Bill, who took him to the two codefendants' house for drug purchases, and Bill's girl friend that the two codefendants lived at the house and that two other men stayed there sometimes, and that he saw one of these two men in the kitchen when he was allowed in the house on his fourth visit. The trial court found that any evidence that the informer could provide regarding two persons in addition to the two codefendants being residents of the house was based upon the "rankest form of hearsay and [would] not [be] admissible at trial." The police who executed the

---

[10]The Court of Appeals commissioner granted the defense motion for permission to review the in camera hearing transcript since the name of the confidential informant inadvertently became part of the public record when a material witness warrant for the informant was issued and not sealed.

search warrant found inside the house, Fish, Uhthoff and a third man, who had a different address, and found documents of residence, such as canceled mail, for only Fish and Uhthoff.

Further, the informant testified that he saw narcotics in Fish's bedroom and that he saw Uhthoff with a large tray of vials of LSD which Uhthoff was applying on some candy. He testified that he overheard Fish and Uhthoff arguing over Uhthoff's apparently being paid less money for a drug sale than Fish thought that he should have been paid. The trial court observed that the informant's testimony would not "disassociate" Uhthoff from possession or control of controlled substances.

As for the disclosure of the informer's identity leading to the discovery of potential defense witnesses, the other two men who allegedly stayed sometimes at the codefendants' house and who were seen in the house, and Bill and his girl friend, who were regular customers of the codefendants, were known to the codefendants and discoverable as witnesses without knowledge of the informer's identity. As noted above, the informant himself would have been an unlikely defense witness since his information regarding Uhthoff was more incriminating than exculpatory.

Uhthoff next contends that the trial court improperly considered the risk to the informant from disclosure. The in camera hearing transcript reveals that Detective Pentony stated that if disclosure were required, the police would prefer that the case be dismissed since at jeopardy would be the informant's ability to work with the police in future cases as he had done in the past. The transcript further reveals that the informant had been threatened in another case and 2 months before purportedly had had his tongue cut off and his top four teeth knocked out. However, the trial court stated that while he took account of the risk to the informant, he was bound by legal criteria in determining whether to order disclosure and that the police and the prosecutor's office were the informant's protectors since if disclosure were ordered, they could dismiss the charges to

protect his identity, although they would have lost this particular case.

A federal court has indicated that concern for the informant's safety is not an improper factor in determining whether disclosure should be ordered. *United States v. Ward,* 703 F.2d 1058, 1062 (8th Cir. 1983). Our State Supreme Court has stated that even if the informer is a material witness, disclosure of his identity may not be required under *Roviaro v. United States* if the public interest in protecting the flow of information outweighs the defendant's interest in disclosure. *State v. Harris, supra* at 150–51. We find no impropriety on this ground.

Last, Uhthoff's argument that the in camera hearing procedure was improper is unfounded. *State v. Casal, supra* at 821, sets forth the procedural guidelines to be followed in such an in camera hearing:

> 1. The defendant and his counsel are to be strictly excluded from the proceeding, but the prosecutor may be present.
> 2. Defense counsel may submit written questions, reasonable in length, which shall be asked by the trial judge. . . .
> 3. A transcript of the proceeding must be made and sealed for possible appellate review.
> 4. Precautions are to be taken to protect the identity of the informant . . .

(Citation omitted.) The proceeding's purpose is to allow an individual defendant the right to question the informant. *State v. Smith,* 101 Wn.2d 36, 44, 677 P.2d 100 (1984).

Here, the informant, prosecutor, and affiant were present at the in camera proceeding. Uhthoff and his attorney were absent but the trial court asked the informant questions that had been submitted by the defendant. Further, a sealed transcript of the proceeding was preserved for appellate review. Uhthoff claims that the prosecutor improperly argued to the judge against the disclosure of the informant's identity. However, he has cited no specific transcript pages in support of his contention and has demonstrated neither any impropriety on the prosecutor's part

nor any resulting prejudice. No abuse of discretion by the trial court has been shown. *United States v. Grisham, supra* at 463–64.

The judgment is affirmed.

RINGOLD, A.C.J., and COLEMAN, J., concur.

Review denied by Supreme Court December 2, 1986.