[No. 9694-7-III. Division Three. July 3, 1990.]

THE STATE OF WASHINGTON, *Appellant,* v. ANTONIO BEBEROS VARGAS, *Respondent.*

392

*Dennis DeFelice, Prosecuting Attorney,* and *Ann Marie DiLembo, Deputy,* for appellant.

*Robert Thompson,* for respondent.

MUNSON, C.J.—On August 23, 1988, Antonio B. Vargas was charged by information with two counts of delivery of a controlled substance, cocaine. RCW 69.50.401(a)(1)(i). The charges were dismissed after the State refused to identify

the confidential informant who participated in the controlled buy. The State appeals, contending the dismissal was error because Mr. Vargas did not present sufficient evidence of the need for an in camera hearing and disclosure of identity. We vacate the order and remand for trial.

On August 19, 1988, a confidential informant accompanied police undercover detective Greg Eppling to an apartment at 212 West Margaret in Pasco to purchase cocaine. The purchase was completed within a minute and the men left. Numerous other people were also present in the apartment including Mr. Vargas and a black man who witnessed the purchase.

Detective Eppling and the confidential informant returned 40 minutes later and made a second purchase. After it was completed, backup officers were instructed to arrest an individual described as a young Mexican, with neatly trimmed medium length hair, wearing a red and white striped shirt, jeans and tennis shoes. The officers proceeded to the apartment complex and began to knock on doors. They seized one man, but after a drive–by identification by Detective Eppling, he was released. Mr. Vargas was later seized at an adjacent apartment, 206 West Margaret, and was positively identified by Detective Eppling during a second drive–by. The informant did not participate in this identification process.

Mr. Vargas, denying he had been involved in the sale, moved for an in camera hearing and disclosure of the identity of the informant. His motion was based solely upon an affidavit filed by his attorney which averred members of the METRO drug task force had made misidentifications in the past and the informant's testimony

> would be helpful and necessary to the defense in proving a misidentification defense given the limited observation time of Det. Eppling and the greater possibility that the informant had purchased drugs from this individual before and thus had a greater observation time leading to a more reliable identification.

The State resisted the motion, contending the informant had been shown a photo montage of suspects prior to the hearing and positively identified Mr. Vargas.

An in camera hearing was held, during which the informant testified. The court determined the informant could aid the defense by identifying a black man who had been present at the buy, who could perhaps implicate another as the one who delivered the cocaine. The informant's identity was ordered revealed; the State refused and sought a stay of proceedings from this court, which was denied. The court then dismissed the charges.

The sole issue is whether the trial court erred by ordering disclosure of the identity of the confidential informant.

The State has a statutory right, also embodied in a court rule, to withhold the identity of a confidential informant. RCW 5.60.060(5);[1] CrR 4.7(f)(2);[2] *Roviaro v. United States*, 353 U.S. 53, 60–61, 1 L. Ed. 2d 639, 77 S. Ct. 623, 627–28 (1957). The privilege is limited, however, to those cases where disclosure is "relevant and helpful to the defense . . . or is essential to a fair determination of a cause . . .". *Roviaro*, 353 U.S. at 60–61. *See also State v. Harris*, 91 Wn.2d 145, 148, 588 P.2d 720 (1978); *State v. Redd*, 51 Wn. App. 597, 606, 754 P.2d 1041, *review denied*, 111 Wn.2d 1007 (1988). Under these circumstances, a constitutional right to disclosure exists if exercise of the privilege will deny the defendant a fair trial. *State v. Thetford*, 109 Wn.2d 392, 396, 745 P.2d 496 (1987); *Harris*, at 149; *State v. Allen*, 27 Wn. App. 41, 45, 615 P.2d 526, *review denied*, 94 Wn.2d 1025 (1980).

---

[1]RCW 5.60.060(5) provides:

"A public officer shall not be examined as a witness as to communications made to him or her in official confidence, when the public interest would suffer by the disclosure."

[2]CrR 4.7(f)(2) provides:

"*Informants.* Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant. Disclosure of the identity of witnesses to be produced at a hearing or trial shall not be denied."

██ The decision to hold an in camera hearing depends upon whether the informant is a material witness on the question of a defendant's guilt or innocence. *State v. Casal,* 103 Wn.2d 812, 816, 699 P.2d 1234 (1985).[3] The defendant must make an initial showing the informant may have evidence of his innocence. *State v. Enriquez,* 45 Wn. App. 580, 584, 725 P.2d 1384 (1986) (citing *Allen,* at 48 (quoting *State v. Potter,* 25 Wn. App. 624, 628, 611 P.2d 1282 (1980))), *review denied,* 107 Wn.2d 1020 (1987). It is the defendant's burden to show (1) an in camera hearing is necessary and (2) disclosure of the informant's identity is warranted in order to insure the defendant a fair trial. The decision to hold an in camera hearing is discretionary. *Redd,* at 606 (citing *State v. Uhthoff,* 45 Wn. App. 261, 268, 724 P.2d 1103, *review denied,* 107 Wn.2d 1017 (1986)).

The State first contends there was insufficient evidence to justify an in camera hearing. Assuming the issue is not moot because an in camera hearing was held, Mr. Vargas argues his identity as the deliverer of the drugs was in issue and the confidential informant could testify as to identity. Unlike *Enriquez* and *Redd,* the informant here was present at the scene of the crime and could identify Mr. Vargas as the person who made the delivery. Thus, his testimony had a direct bearing on Mr. Vargas' guilt or innocence. The court did not abuse its discretion in holding the in camera hearing. *Allen.*

 The State also contends Mr. Vargas did not make the necessary showing to warrant disclosure of the informant's identity. In determining when disclosure is justified, the court must take into consideration the particular circumstances of each case, such as "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro,* 353 U.S. at 62; *Harris,* at 150. In the consolidated cases of *People v.*

---

[3]In *Casal,* at 821–22, the court suggests guidelines to be followed in conducting an in camera hearing. There is no challenge to the manner in which this in camera hearing was conducted.

*Goggins* and *People v. Brown,* 34 N.Y.2d 163, 313 N.E.2d 41, 356 N.Y.S.2d 571, *cert. denied,* 419 U.S. 1012 (1974), the court considered whether an informant should be identified when he introduced an undercover police officer to a drug seller and left the scene shortly before the actual sale. As noted at pages 168–70:

> Limiting the adversary stance in criminal prosecutions, the State is obliged to disclose to a defendant evidence and potential witnesses possessed by or known to the prosecution which may establish his innocence. That such evidence or knowledge may involve prosecutorial privileges of one sort or another is to no avail. The privileges must yield to the overriding consideration of avoiding the risk of convicting the innocent, unless, of course, the prosecution should elect to abandon its case rather than allow disclosure.
>
> . . . .
>
> Bare assertions or conclusory allegations by a defendant that a witness is needed to establish his innocence will not suffice. Instead he must show a basis in fact to establish that his demand does not have an improper motive and is not merely an angling in desperation for possible weaknesses in the prosecution's investigation.
>
> On this point the nature of the informant's role is of some significance. Undoubtedly the strongest case for disclosure is made out when it appears that the informant was an eyewitness or a participant in the alleged crime.

(Citations omitted.) The case then described two situations which require disclosure: weaknesses in the prosecutor's case or development of the defense. Defendant Goggins established a need on both of these grounds. First, the prosecution's identification of him was based upon a very sketchy description not confirmed by any participant in the crime until 1 year later. Second, the defendant was arrested while in a public bar where the crime had occurred, but had an alibi defense confirmed by his wife, had no arrest record, was gainfully employed, denied being present in the bar at the time of the crime and gave a credible explanation for his presence in the bar at the time of his arrest.

Here, Mr. Vargas claims two weaknesses in the State's case justified the order: (1) the initial seizure of a Hispanic, based upon a generic description of the drug seller, who was admittedly the wrong person and (2) the METRO's history

of misidentification of suspects. As to the first weakness, Detective Eppling confirmed Mr. Vargas' identity shortly after his arrest and Mr. Vargas had no reasonable explanation for his presence in the apartment at the time of the delivery; thus, there was minimal chance of misidentification. The second contention of prior misidentifications is merely conclusory and unsupported by any underlying factual support.

The State also contends Mr. Vargas did not provide sufficient evidence the informant's testimony would have been helpful to his defense because the informant had positively identified Mr. Vargas as the one who delivered the drugs on this occasion and on prior occasions. As noted in *Goggins,* at 172:

> In *Brown,* the sale was made in a particular apartment in which the defendant was found when arrested, rather than in a public bar as in *Goggins.* Most important, after the arrest of Brown, the officer who made the purchase went to the station house after the backup team had arrested the defendant and identified him as the seller. On these facts, the trial court properly exercised its discretion in denying disclosure. Here the risk of mistaken identification was minimal. Significantly the defendant has failed to focus on any weak point in the prosecutor's case or closely contested issue of fact which might be resolved by disclosure of the informant's identity.

The same rationale is applicable here. The two purchases and the arrest were consecutive incidents which apparently happened within 1 hour. No defense has been raised other than misidentification, the risk of which, as noted in *Brown,* was minimal.

The trial court focused on the issue of a missing witness, expressing its concern the informant would have relevant information about the identity of the black man who had also been present at the delivery. The informant did not know his name but admitted he could identify the black man from police photographs. The court reasoned there was a possibility this black man could identify a person other than Mr. Vargas who delivered the drugs. The same issue was presented in *State v. Uhthoff,* 45 Wn. App. 261, 270, 724 P.2d 1103, *review denied,* 107 Wn.2d 1017 (1986):

As for the disclosure of the informer's identity leading to the discovery of potential defense witnesses, the other two men . . . were regular customers of the codefendants, were known to the codefendants and discoverable as witnesses without knowledge of the informer's identity. As noted above, the informant himself would have been an unlikely defense witness since his information regarding Uhthoff was more incriminating than exculpatory.

Here, Mr. Vargas was in the apartment at the time of the sale, presumably observed the people present and would also be able to identify the black man should he wish to call him as a witness. Thus, the disclosure of the identity of the informant was not necessary to the development of the missing witness.

Finally, Mr. Vargas has not sufficiently established the informant would provide exculpatory evidence. The informant identified Mr. Vargas at the in camera hearing as the one who delivered the cocaine. Though the basis for his identification was an unsupervised photo montage at the prosecutor's office, this method, although somewhat suspect, was arguably sanitized by the court's examination of the informant at that hearing.

Unless the court had reason to suspect Detective Eppling's identification, a reason which it did not give, the testimony of the informant would have been cumulative.

The court erred in finding Mr. Vargas had made a sufficient showing to require the disclosure of the identity of the confidential informant. The order of dismissal is vacated and the cause is remanded for trial.

GREEN, J., and COLE, J. Pro Tem., concur.