FILED
COURT OF APPEALS
DIVISION II

2013 SEP 24 AM 9: 30

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43409-1-II |
| Appellant, | : |
| v. | |
| DENNIS EDWIN KINNEY, | Consolidated with |
| Respondent, | |
| STATE OF WASHINGTON, | No. 43412-1-II |
| Appellant, | |
| v. | |
| LORENA KINNEY, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, A.C.J. — The State of Washington appeals the superior court's order requiring it to disclose the identity of an unnamed confidential informant for purposes of a *Franks*[1] hearing or possible suppression motion in the State's case against Dennis Edwin Kinney and Lorena Kinney.[2] Because the Kinneys did not present sufficient evidence to cast doubt on the veracity of the material representations in the search warrant affidavit, and an in camera

---

[1] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[2] We consolidated the Kinneys' appeals and on July 18, 2013, our commissioner granted discretionary review.

hearing is the proper procedure for deciding whether to disclose the identity of the informant and to inquire into the affiant's veracity, we reverse and remand for further proceedings.

FACTS

I. BACKGROUND

In May 2011, Pierce County Deputy Sheriff Kory Shaffer applied for a search warrant for the Kinneys' residence and other structures on their property. In his search warrant affidavit, Deputy Shaffer stated that an unnamed confidential informant (CI) had advised him that the Kinneys were selling drugs. The CI then made a controlled purchase of a controlled substance from both Lorena Kinney and Dennis E. Kinney, and reported that he or she had seen packaged methamphetamines in quantities for sale inside the Kinneys' home. The CI also conducted two separate reliability buys to establish his or her credibility.

After Deputy Shaffer identified the Kinneys and confirmed their identity with the CI, he determined that (1) both of the Kinneys had prior drug convictions; (2) they had been the subject of an earlier search warrant; (3) in 2008, Lorena[3] had been identified as purchasing over the legal limit of pseudoephedrine and had been seen throwing away items related to methamphetamine manufacturing; (4) since 2009, Lorena had purchased pseudoephedrine more than 33 times and had purchased dry ice[4]; (5) the Kinneys' son also had felony drug convictions and had been arrested on the Kinneys' property on May 24, 2011, for possession of methamphetamine; and (6) the son had made more than 27 pseudoephedrine purchases since 2009 and had purchased dry

---

[3] We use Lorena and Dennis's first names for clarity; we intend no disrespect.

[4] Deputy Shaffer stated that the last dry ice purchase was January 6, 2011; he did not indicate when Lorena had last purchased pseudoephedrine.

2

ice.[5] Deputy Shaffer stated that based on his training and experience, he knew that pseudoephedrine and dry ice were both commonly used in the methamphetamine manufacturing process.

When the law enforcement officials executed the search warrant, Lorena admitted to using methamphetamine that she received from Dennis and to selling methamphetamine; Dennis admitted that he had purchased and sold methamphetamine. Inside the residence and a motor home on the property, the officers also found items related to the manufacture and sale of methamphetamine.

## II. PROCEDURE

The State charged the Kinneys with unlawful possession of methamphetamine with intent to deliver[6] and unlawful manufacture of methamphetamine[7]; the State alleged that each of these offenses occurred on or about June 3. The probable cause declarations accompanying the charging informations did not mention the CI or any information obtained from the CI; relying instead on the evidence discovered during and after the search.

At a pretrial hearing on a continuance issue, Lorena's counsel orally advised the trial court that he needed to interview the CI before pursuing a suppression motion or requesting a

---

[5] Deputy Shaffer did not state when the Kinneys' son last purchased pseudoephedrine or dry ice.

[6] RCW 69.50.401(1). The legislature amended this statute in 2013, adding a new section that is not relevant to this appeal. LAWS OF 2013, ch. 3, § 19. Accordingly, we cite to the current version of the statute.

[7] RCW 69.50.401(1).

No. 43409-1-II/43412-1-II

*Franks* hearing or to be able to challenge the search warrant but the State refused to give him access to the CI.

The trial court responded:

> Well, I'll tell you what, Counsel. If they want to interview the CI, and the person is named in the police reports, then they have the right to go ahead and interview them.
>
> . . . .
>
> . . . I mean, whether or not he's going to testify, whether—you know, it's up to them to make the determination in their case; so I'm going to go ahead and grant the continuance [to allow for the interview and additional briefing].

Verbatim Report of Proceedings (VRP) (Apr. 16, 2012) at 5. The trial court ordered the State to provide defense counsel with access to the CI within two weeks. VRP at 6-7. The trial court stated:

> Counsel, you know, if the person is listed in the records, they have the right to interview them. I mean, it's liberal rules of discovery in this State; so—
>
> . . . .
>
> . . . According to [defense counsel], you know, the affidavit has referenced numerous times to the CI who has, apparently, been in their home and seen things, so they are entitled to interview this individual; so—

VRP (Apr. 16, 2012) at 7.

Three days later, the State filed a written response to defense counsels' oral motion to compel the CI's disclosure. The State argued that the court should not require it to disclose the CI's identity because (1) the Kinneys were seeking to challenge only the probable cause determination related to the search warrant, rather than contesting their guilt at trial; (2) the CI's tip was not the sole basis for probable cause to issue the search warrant; (3) the CI was not a potential witness; and (4) the Kinneys had not made a showing that the CI's identity was essential to their trial preparation. The trial court considered the State's motion as a motion for reconsideration.

4

At a hearing on this motion, the State argued that, under CrR 4.7(f)(2), RCW 5.60.060, and case law,[8] it did not have an obligation to disclose a nontestimonial confidential informant or to make the CI available for defense interviews. Lorena's counsel responded that they needed to talk to the CI because they had "evidence from [their] witnesses, he lied." VRP (Apr. 23, 2012) at 15. Lorena's counsel also asserted that the ability to confront the CI on credibility issues (including his or her criminal history and any motivation to lie), was necessary for a challenge to the search warrant and that the inability to interview the CI infringe[d] upon Lorena's constitutional rights and harmed her ability to prepare an adequate defense.[9] Lorena's counsel further stated that he was not asking the court to publically disclose the CI's identity. Similarly, Dennis's counsel asserted that because the search warrant was based on the CI's knowledge and what the CI allegedly told the officers, the defendants had a right to confront the CI. Counsel further stated they had not yet interviewed Deputy Shaffer and that they wanted to interview the CI about his basis of knowledge before interviewing the deputy.

The trial court initially told defense counsel to talk to the deputy first and then "articulate exactly what [they] are looking for." VRP (Apr. 23, 2012) at 19. But it also stated that it seemed necessary for counsel to know the CI's identity to check his or her criminal history and background. Finally, the court stated that defense counsel could not tell their clients the CI's

---

[8] *Roviaro v. United States*, 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), and *State v. Atchley*, 142 Wn. App. 147, 173 P.3d 323 (2007).

[9] Beyond asserting that Lorena wanted to challenge the search, Lorena's counsel did not identify any specific defense.

identity and that it would not require the State to make the CI available to the defense until the defense could show it might have a "viable motion to suppress." VRP (Apr. 23, 2012) at 21.

In its written order, the trial court ordered the State to produce, for a "pretrial interview," the officer who worked with the CI. Clerk's Papers at 16. The court also ordered the officer to reveal the CI's name and criminal history. We granted the State's motion for discretionary review of this order.

## ANALYSIS

The State argues that the trial court erred when it ordered the officer to disclose the CI's identity when the CI was not a witness to the charged crimes and had only supplied information used to establish probable cause for the search warrant. We agree that the trial court abused its discretion in requiring the State to disclose the CI's identity.[10]

### I. STANDARD OF REVIEW

"We review the trial court's decision to order or to refuse to order disclosure of an informant's identity for abuse of discretion." *State v. Petrina*, 73 Wn. App. 779, 782, 871 P.2d 637 (1994) (citing *State v. Harris*, 91 Wn.2d 145, 152, 588 P.2d 720 (1978); *State v. Uhthoff*, 45 Wn. App. 261, 268, 724 P.2d 1103, *review denied*, 107 Wn.2d 1017 (1986); *State v. Bailey*, 41 Wn. App. 724, 729, 706 P.2d 229 (1985)). "A trial court abuses its discretion when it acts on untenable grounds or for untenable reasons or when its decision is manifestly unreasonable."

---

[10] The Kinneys argue on appeal that we may affirm the trial court's order on alternative grounds and appear to assert that the CI's identity was also essential to the determination of their guilt or innocence. Because the Kinneys requested the trial court disclose the CI only for purposes of challenging the search warrant, we decline to address this issue on appeal.

*Petrina*, 73 Wn. App. at 783 (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

## II. "Informer's Privilege"

Generally, the government is privileged to refuse to disclose the identity of informants who provide information of criminal violations. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 627, 1 L. Ed. 2d 639 (1957); *Harris*, 91 Wn.2d at 148. The "informer's privilege" is intended to further effective law enforcement and to encourage citizens to report their knowledge of criminal activities. *Roviaro*, 353 U.S. at 59; *Harris*, 91 Wn.2d at 148. This privilege is codified at CrR 4.7(f)(2)[11] and RCW 5.60.060(5).[12]

Courts must, however, balance this privilege with the defendant's due process rights, fundamental fairness, and the defendant's Sixth Amendment right to compel attendance of witnesses who could materially aid their defense. *Roviaro*, 353 U.S. at 60; *State v. Smith*, 101 Wn.2d 36, 41-42, 677 P.2d 100 (1984); *Harris*, 91 Wn.2d at 149; *Petrina*, 73 Wn. App. at 783. When "disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60-61; *Harris*, 91 Wn.2d at 148. But when the defendant seeks the CI's identity solely for purposes of challenging a probable cause determination rather than during the guilt

---

[11] CrR 4.7(f)(2) provides in part: "Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant. Disclosure of the identity of witnesses to be produced at a hearing or trial shall not be denied."

[12] RCW 5.60.060(5) provides: "A public officer shall not be examined as a witness as to communications made to him or her in official confidence, when the public interest would suffer by the disclosure."

phase of the trial, disclosure of the CI's identity is not necessarily required. *State v. Atchley*, 142 Wn. App. 147, 156, 173 P.3d 323 (2007) (citing *State v. Casal*, 103 Wn.2d 812, 816, 699 P.2d 1234 (1985)). Recognizing that when an informant's identity is secret it may be difficult for the defendant to make a preliminary showing that disclosure is necessary, our Supreme Court has held,

> [W]here a defendant presents information which casts a reasonable doubt on the veracity of material representations made by a search warrant affidavit, and the challenged statements are the sole basis for probable cause to issue the search warrant, the trial court should exercise its discretion to conduct an in camera examination of the affiant and/or secret informant on the veracity issue.

*Casal*, 103 Wn.2d at 813 (emphasis omitted).

Assuming but not deciding that the CI's statements were the sole basis for probable cause because the other information the deputy provided was either several months or years old or it related to the Kinneys' son, the Kinneys did not present evidence that was sufficient to cast a reasonable doubt on the veracity of the material representations in the search warrant affidavit. At best, Lorena's counsel made a bare assertion, unsupported by any affidavit, that other witnesses had asserted that the CI had "lied." VRP (Apr. 23, 2012) at 15. Counsel did not identify what these witnesses claimed the CI had lied about or explain how they knew the CI had lied. Nor did counsel identify anything that the trial court could not have reviewed in camera, rather than requiring disclosure of the CI's identity.[13] Furthermore, even if the Kinneys had presented information sufficient to cast a reasonable doubt on the veracity of the material

---

[13] For instance, the trial court could easily review the CI's criminal history and other credibility or reliability factors at an in camera hearing and, if necessary, provide defense counsel with redacted information that would have allowed the Kinneys to challenge the CI's credibility without having to disclose the CI's identity.

representation in the search warrant, "[t]he procedure for deciding whether to disclose the identity of the informant, and to inquire into the affiant's veracity, is an in camera[, ex parte] hearing pursuant to CrR 4.7(h)(6)." *State v. White*, 50 Wn. App. 858, 865, 751 P.2d 1202 (1988) (citing *Casal*, 103 Wn.2d at 818-19).

Accordingly, we hold that the trial court erred in ordering disclosure of the CI's identity, and we reverse the trial court's order requiring disclosure and remand for further proceedings. If the Kinneys provide sufficient support on remand, the trial court should conduct any necessary in camera hearings before ordering disclosure of the CI's identity.[14]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Penoyar, J.

Bjorgen, J.

---

[14] The Kinneys argue that an in camera hearing is not required under *Petrina*. Although this may be true when a trial court is determining whether a CI's identity must be disclosed during the guilt phase of the trial, as was the case in *Petrina*, here the trial court will likely need to make determinations about the relevancy of the CI's identity in relation to the search warrant affidavit without disclosing the CI's identity in the process, and *Casal* clearly establishes that an in camera hearing is the proper approach under such circumstances.